IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DR. MEETA JAIN PATEL, ) | |
| KARA KUO, ) | |
| KIM NOTARO, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 20-cv-893 |
| ) | |
| BOARD OF EDUCATION OF ) | |
| HINSDALE TOWNSHIP ) | |
| HIGH SCHOOL DISTRICT 86, ) | |
| NANCY POLLAK ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

"The right of an American citizen to criticize public officials and policies . . . is the central meaning of the First Amendment." *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964). Yet Defendants' policies and practices deliberately obstruct that right at their school board meetings, and do so even though they permit compliments of the same public officials. Under both the First Amendment of the United States Constitution and the Illinois Open Meetings Act, Defendants' content-based restrictions and viewpoint discrimination must be enjoined.

**I.      FACTUAL BACKGROUND**

Defendant Board of Education of Hinsdale Township High School District 86 ("the Board") is a school district, a state actor under federal civil rights law, and a public body under the Illinois Open Meetings Act. Its board meetings are a designated public forum: the Board opens its public properties, Hinsdale South High School and Hinsdale Central High School, as a

place for public comment at its regular meetings. Ex A. (December 12, 2019, meeting agenda). Defendant Nancy Pollak ("Pollak") is the president of the Board and presides over Board meetings.

The Board's policies and practices regarding public comment at its meetings are promulgated by the Board, which has final policymaking authority to regulate public comments at Board meetings, collectively or through the President of the Board. Compl. Exs. A-B. The Board's Policy 2:230 states that any person appearing before the Board is expected to "[c]onduct oneself with respect and civility toward others." Compl. Ex. A. The Board contends that its Board President has "authority in accordance with Policy 2:230 to halt public comment that [is] deemed as lacking 'respect and civility toward others,'" even when it regards a matter of public concern about Board activities. Pamela Lannom, *D86 Audience Members' Comments Cut Short,* The Hinsdalean (December 19, 2019), https://www.thehinsdalean.com/story/2019/12/19/news/d86-audience-members-comments-cut-short/819.html (quoting Board member). The Board's stated view of its policies—which it has applied against Plaintiffs here—similarly asserts that "personnel issues" and "talk about personnel and specific people," even when those people are public officials and the discussion involves a matter of public concern related to Board activities, are prohibited from discussion at Board meetings. Vimeo, SD86 School Board, Regular Action Meeting December 12, 2019, at 6:40, 21:33, 22:09, *available at* https://vimeo.com/379278325 (December 13, 2019). Rather than revise or change this policy, the Board has doubled down on it since this litigation began. SD86 School Board, *Committee of the Whole Meeting February 13, 2020,* at 1:00:00, *available at* https://d86.hinsdale86.org/Page/556 (February 13, 2020) (stating that "issues involving students or staff are not appropriate for public comment.").

At the same time that Defendants prohibit criticism of public officials and employees at public board meetings, however, they allow favorable comments. Vimeo, SD86 School Board, *Regular Action Meeting November 25, 2019,* at 11:40 (November 26, 2019), *available at* https://vimeo.com/375666932 (staff member at Hinsdale Central High School allowed to compliment Principal Bill Walsh); Vimeo, SD86 School Board, *Regular Action Meeting December 12, 2019,* at 27:49, *available at* https://vimeo.com/379278325 (December 13, 2019) (community member allowed to speak favorably about Principal Walsh and Ms. Hurt); Vimeo, SD 86 School Board, *Committee of the Whole Meeting January 9, 2020,* at 18:02 *available at* https://vimeo.com/384203741 (January 11, 2020) (community member allowed to compliment former Board president Bill Carpenter and Board member Kevin Camden); *id.* at 32:57 (community member allowed to commend Dr. Carol Baker and her science program); *id.* at 36:35 (community member allowed to commend Dr. Baker and her work).

## II.     LEGAL STANDARDS

### A.     First Amendment Preliminary Injunctions

A party is entitled to a preliminary injunction if it can demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) that the party will suffer irreparable harm which, absent injunctive relief, outweighs any irreparable harm the respondent will suffer if the injunction is granted; and (4) that the injunction will not harm the public interest. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005); *Joelner v. Village of Washington Park*, 378 F.3d 613, 619 (7th Cir. 2004). It is well established that "'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,' and [that] money damages are therefore inadequate." *Joelner*, 378 F.3d at 620 (*quoting Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

There can be no irreparable harm from preventing the enforcement of an unconstitutional policy because "it is always in the public interest to protect First Amendment liberties." *Joelner*, 378 F.3d at 620; *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (reversing trial court and ordering entry of preliminary injunction, noting that injunctions protecting First Amendment freedoms are always in the public interest). As such, "[w]hen a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor," and the court uses a "sliding scale" approach, whereby "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Id*. at 619; *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

To assert a First Amendment violation, a plaintiff must show one of the following: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) that the constitutional injury was caused by a person with final policymaking authority." *Mnyofu*, 2012 WL 5389732, at *5, *citing McTigue*, 60 F.3d at 382. In a designated public forum, any content-based exclusion of speech is subject to strict scrutiny, "meaning that the government must show the exclusion is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Mnyofu*, 2012 WL 5389732, at *5, *citing Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011). A restriction on speech is content-based if "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Mnyofu*, 2012 WL 5389732, at *5, *citing Rosenberger*, 515 U.S. at 828. Viewpoint discrimination is rarely, if ever, permitted under the First Amendment. *Rosenberger*, 515 U.S. at 829.

B.    **Illinois Open Meetings Act Preliminary Injunctions**

Similar to the First Amendment context, under Illinois law, "a preliminary injunction is warranted if (1) a clearly ascertainable right requires protection, (2) irreparable injury will result in the absence of an injunction, (3) no adequate remedy at law is available, and (4) the moving party is likely to succeed on the merits of the case." *Roxana Cmty. Unit Sch. Dist. No. 1 v. WRB Ref., LP*, 2012 IL App (4th) 120331, ¶ 23. However, "an exception to this burden exists where injunctive relief is expressly authorized by statute." *Id*. at ¶ 24. This exception applies where "either (1) injunctive relief is provided 'for public officials to use in enforcing' the statute or 'to afford citizens a private right of action to restrain public officials from' violating a statute defining official duties or powers; or (2) 'even an isolated violation' of the statute is presumed to cause irreparable harm to the public." *Id*. at ¶ 24 (citation omitted). In these cases a plaintiff need only show that "(1) the defendant has violated the statute and (2) the plaintiff has standing—'there is no necessity to prove irreparable damage or the absence of an adequate remedy at law.'" *Id*. (citations omitted).

It is the explicit intent of the Open Meetings Act "to ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly." 5 ILCS 120/1. OMA also provides members of the public the right to address public officials. 5 ILCS 120/2.06(g). Section 2.06(g) states that "[a]ny person shall be permitted an opportunity to address public officials under the rules established and recorded by the public body." *Id*. The Open Meetings Act "expressly provides for injunctive relief where justified." *Roxana*, 2012 IL App (4th) 120331, ¶ 26. OMA Section 3(c) states: "The court, having due regard for orderly administration and the public interest, as well as for the interests of the parties, may grant such relief as it deems appropriate, including … granting an injunction against future violations of this Act." 5 ILCS

120/3(c). The Illinois Appellate Court has held that "the provision allowing injunctions gives rise to a presumption that the violation of this statute causes a distinctly public harm," and that the limited pleading requirements for injunctions apply in OMA cases. *Roxana*, 2012 IL App (4th) 120331, ¶ 26.

### III.     ARGUMENT

#### A. Defendants Violated And Will Continue To Violate The First Amendment, Necessitating A Preliminary Injunction

##### i.     Plaintiffs Are Likely To Succeed On The Merits Of Their First Amendment Claim

There can be no dispute that Defendants' meetings are a designated public forum. *E.g., Surita,* 665 F.3d at 869 ("There is no doubt that audience time during Waukegan city council meetings constituted a designated public forum." (collecting cases)); *see also Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 2016 WL 1319736, at *2 (N.D. Ill. Apr. 5, 2016). Defendants cannot dispute that their policies have permitted compliments but prohibited criticism of public officials and employees. Viewpoint discrimination—such as a prohibition against criticism, but not compliments, of public officials—"is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. "These principles provide the framework forbidding the State to exercise viewpoint discrimination, even when the limited public forum is one of its own creation." *Id.* (collecting cases). Given this, Plaintiffs are likely to succeed on the merits. *Mnyofu*, 2016 WL 1319736, at *3 (denying motion to dismiss and granting preliminary injunction to plaintiff who was restricted from criticizing public officials during public comment at a school board meeting stating that plaintiff had a "reasonable likelihood of success on the

merits because 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury (citation omitted)'").

Further, the restriction at issue here is not just viewpoint discrimination—it is an effort to silence criticism of public officials. Courts have repeatedly held that restrictions against criticism of government violate the First Amendment. *New York Times v. Sullivan*, 376 U.S. 254, 273 (1964)) ("The right of an American citizen to criticize public officials and policies . . . is the central meaning of the First Amendment."); *Jefferson v. Ambroz*, 90 F.3d 1291, 1298 (7th Cir. 1996) ("The right to criticize public officials is . . . protected by the First Amendment."). Therefore, Defendants' prohibition on criticism of public officials violates the First Amendment and Plaintiffs are likely to succeed on the merits.

    ii.  **Plaintiffs Are Suffering Irreparable Harm, And Thus There Is No Adequate Remedy At Law**

In the context of a preliminary injunction, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (*quoting* 11A Charles Alan Wright *et al*., Federal Practice & Procedure § 2948.1 (2d ed. 1995). This is particularly true in First Amendment claims. *Ezell*, 651 F.3d at 699 (*citing Christian Legal Soc'y,* 453 F.3d at 867 ("[V]iolations of First Amendment rights are presumed to constitute irreparable injuries[.]" (*citing Elrod,* 427 U.S. at 373); *see also Nat'l People's Action v. Vill. of Wilmette*, 914 F.2d 1008 (7th Cir. 1990). The loss of First Amendment rights is presumed to cause irreparable harm based on "the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Ezell*, 651 F.3d at

699 (*quoting Miles Christi Religious Order v. Twp. of Northville,* 629 F.3d 533, 548 (6th Cir. 2010)); *see also KH Outdoor, LLC v. City of Trussville,* 458 F.3d 1261, 1272 (11th Cir. 2006). Therefore, Plaintiffs are suffering irreparable harm and there is no adequate remedy at law. *See also* SD86 School Board, *Committee of the Whole Meeting February 13, 2020,* at 2:33:49, *available at* https://d86.hinsdale86.org/Page/556 (February 13, 2020) (Board member stating in response to this lawsuit that "[i]t matters not whether you're right or you're wrong, but what matters is you're resolute in your decision.").

### iii. The Balance Of Hardships Favors A Preliminary Injunction

As the Seventh Circuit has repeatedly held, "injunctions protecting First Amendment freedoms are always in the public interest." *See e.g.*, *Am. Civil Liberties Union of Illinois,* 679 F.3d at 590; *Christian Legal Soc'y*, 453 F.3d 853 at 859; *O'Brien v. Town of Caledonia*, 748 F.2d 403, 408 (7th Cir. 1984). This is because "[t]he public interest is clearly served by strong and vigorous protection of the First Amendment." *Ayres v. City of Chicago*, 966 F. Supp. 701, 717 (N.D. Ill. 1997). Therefore, this factor, like all the factors, comes out in favor of a preliminary injunction.

### B. Defendants Also Violated OMA, Necessitating A Preliminary Injunction

Plaintiffs need only show a likelihood that Defendants violated the Illinois Open Meetings Act in order to obtain a preliminary injunction. *Roxana*, 2012 IL App (4th) 120331, ¶¶ 24-26. Here, Defendants violated Plaintiffs' clearly established rights under OMA by not allowing them to criticize public officials and employees during public comment.

Section 2.06(g), "right to speak," states: "Any person shall be permitted an opportunity to address public officials under the rules established and recorded by the public body." 5 ILCS 120/2.06(g). Critically, nowhere in the plain language of OMA does it state that public bodies

may restrict speech in public comment to only the speech that agrees with the public body's positions and officials. *See* 5 ILCS 120. And rightly so: such a restriction would defeat the fundamental purposes of OMA and allow public bodies to evade the "sunshine of public scrutiny." *Roxana Cmty. Unit Sch. Dist. No. 1 v. Envtl. Prot. Agency*, 2013 IL App (4th) 120825, ¶ 56.

As far as Plaintiffs are aware, *Roxana* is the only appellate case which directly addresses Section 2.06(g).[1] *Roxana*, 2013 IL App (4th) 120825, ¶¶ 57-58. The Illinois Appellate court described defendant's failure to provide an opportunity to address public officials at a public meeting as both a violation of the explicit language of 2.06(g) and a violation of OMA's "overarching purpose." *Id*. at ¶ 58. The defendant in *Roxana* had refused to allow the plaintiffs to state their position on the approval or disapproval of a tax exemption in oral public comment. *Id.* at ¶¶ 56-58. The appellate court reversed the trial court holding that the defendant had violated Section 2.06(g) of OMA by refusing to let the plaintiffs address the issue via spoken public comment. *Id.* at ¶¶ 56-59.

Defendants' refusal to allow public comment critical of its officials is a blatant violation of the both the plaint language of Section 2.06(g) and OMA's overarching purpose. As a result, this Court should issue a preliminary injunction against Defendants.

## IV. THE BOND REQUIREMENT SHOULD BE WAIVED

Under Federal Rule of Civil Procedure 65(c), district courts have discretion to determine the amount of the bond accompanying a preliminary injunction, and this includes the authority to

---

[1] The only other case Plaintiffs are aware of is the state trial court case *Thayer v. Chicago City Council*, in which the Chicago City Council failed to give the public an opportunity for public comment as required by Section 2.06(g). Ex. B (12/20/16 Memo Opinion and Order) (granting a "mandatory permanent injunction" against Chicago City Council).

set no bond or only a nominal bond. Waiving the bond requirement is appropriate here because Plaintiffs are alleging violations of their fundamental rights under the Constitution, and Defendants cannot show any significant harm from a preliminary injunction requiring a bond anyway. *See Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right."); *Hodgkins v. Peterson*, No. 1:04-CV-00569-JDT-TA, 2004 WL 1854195, at *2 (S.D. Ind. July 23, 2004) ("Because there is no realistic likelihood of harm to the Defendants from enjoining enforcement of Indiana's juvenile curfew law, no security bond shall be required.").

## V.      CONCLUSION

For these reasons, this Court should issue a preliminary injunction enjoining Defendants from prohibiting criticisms or other comments about public officials related to matter of public concern at their public meetings.

RESPECTFULLY SUBMITTED,

*/s/ Joshua Hart Burday*

_____

Attorneys for Plaintiffs
DR. MEETA JAIN PATEL
KARA KUO
KIM NOTARO

Matthew Topic
Joshua Burday
Merrick Wayne
LOEVY & LOEVY
311 N. Aberdeen, Third Floor

Chicago, IL 60607<br>
(312) 243-5900<br>
joshb@loevy.com

**CERTIFICATE OF SERVICE**

I, Joshua Burday, an attorney, hereby certify that on February 19, 2020, I caused the foregoing Plaintiff's Motion for Preliminary Injunction to be served on all counsel of record via the Courts CM/ECF system.

*/s/ Joshua Hart Burday*

- 11 -